IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEISHA G. WESPI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 21-1634 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| *Acting Commissioner of Social Security*, | ) |
| | ) |
| Defendant. | ) |

O R D E R

AND NOW, this 28th day of February, 2023, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Act, 42 U.S.C. § 1381 *et seq.*, finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153-54 (2019); *Jesurum v. Secretary of U.S. Dep't of Health & Human Servs*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988)). *See also Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (*citing Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff raises three general arguments as to why she believes that the Administrative Law Judge ("ALJ") erred in finding her to be not disabled. First, she argues that the ALJ was

1

incorrect in finding that her skin condition did not meet or equal the requirements for Listing 8.06 at Step Three of the sequential analysis.  Second, she asserts that the ALJ failed to comply with the remand order issued by the Appeals Council in this matter.  Finally, Plaintiff contends that, in any event, the ALJ's findings regarding her residual functional capacity ("RFC") are not supported by substantial evidence.  The Court finds no merit in any of these contentions and will affirm.

Plaintiff first argument is that her hidradenitis met the requirements of Listing 8.06, 20 C.F.R. Part 404, Subpart P, Appendix 1, at Step Three.  Specifically, she argues that the ALJ improperly based her finding that the listing did not apply on the fact that Plaintiff did not suffer from lesions simultaneously in both axillae.  Plaintiff asserts that such simultaneous lesions are not required and that the record supports that her condition meets or equals the requirements for the listing.  The Court disagrees.

Listing 8.06 for hidradenitis suppurative requires that a claimant establish "extensive skin lesions involving both axillae, both inguinal areas, or the perineum that persist for at least 3 months despite continuing treatment as prescribed."  Accordingly, there are three distinct requirements to meet the listing: (1) skin lesions that are extensive; (2) that are located in both axillae (armpits), both inguinal areas (groin or lowest lateral regions of the abdomen), or the perineum (between the anus and the vulva); and (3) that persist for three months despite appropriate treatment.  *See Sielaff v. Comm'r of Soc. Sec.*, No. 1:10-cv-1571, 2011 WL 7416336, at *7 (N.D. Ohio Nov. 17, 2011), *report and recommendation adopted by*, 2012 WL 567614 (N.D. Ohio Feb. 21, 2012).  As with any listing at Step Three, a claimant must "present medical findings equal in severity to *all* the criteria of a listed impairment."  *Degenaro-Huber v. Comm'r of Soc. Sec.*, 533 Fed. Appx. 73, 75 (3d Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in the original)).

Plaintiff suggests that the ALJ's statement that "[a]lthough the claimant has evidence of lesions involving both axillae, these lesions have not occurred simultaneously" (R. 15-16), is a misstatement of the second criterion for Listing 8.06.  She asserts that this criterion requires only that lesions be present in both axillae, not that this necessarily occur at the same time.  However, Plaintiff's argument overlooks the first criterion requiring that the lesions also be *extensive*.  As the ALJ pointed out, the regulations define "extensive skin lesions" as "those that involve multiple body sites or critical body areas, and result in a very serious limitation."  20 C.F.R. Part 404, Subpart P, App. 1 § 8.00(C)(1).  Examples include "lesions that interfere with the motion of your joints and that very seriously limit *your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity*" as well as lesions that would seriously limit the ability to perform fine and gross motor movements or to ambulate.  *Id.* (emphasis added).  The ALJ specifically found that Plaintiff's lesions were not extensive and in doing so noted, *inter alia*, that Plaintiff's lesions did not occur in both axillae simultaneously so as to limit her use of both upper extremities.  (R. 15-16).  She further noted that the objective medical evidence documented normal strength, range of motion, gait, and dexterity and that Plaintiff's most severe flares were outside of the relevant time period.  (R. 16).  Because the ALJ found that Plaintiff's lesions were not extensive, and therefore did not meet the first requirement

of Listing 8.06, it does not matter whether or not the lesions were required to exist simultaneously in both axillae to satisfy the second criterion.

Plaintiff's claims that evidence supports her position that her condition at least equals Listing 8.06 is really no more than a request for the Court to reconsider and analyze the evidence. However, if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently. *See Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)); *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); *Berry*, 738 F. Supp. at 944 (*citing Cotter*, 642 F.2d at 705). "The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009). Here, substantial evidence supports the ALJ's determination; indeed, as noted above, she discussed the objective medical findings at significant length in finding that Plaintiff did not meet Listing 8.06.

Plaintiff next argues that the ALJ failed to comply with the remand order of the Appeals Council issued on August 18, 2020 (R. 134-35). The Court notes at the outset that it is not entirely clear what authority it has to consider such an argument. Although ALJs are required to comply with Appeals Council orders, *see* 20 C.F.R. § 404.977(b), courts disagree as to whether district courts are authorized to review an ALJ's decision to ensure such compliance. *Compare Mor v. Kijakazi*, No. CV 21-1730 (JMV), 2022 WL 73510, at *5 (D.N.J. Jan. 7, 2022) (noting that some courts have found this compliance issue to be outside the scope of reviewing authority in Section 405(g) of the Act), *with Lok v. Barnhart*, No. CIV. A. 04-3528, 2005 WL 2323229, at *7 (E.D. Pa. Sept. 19, 2005), *and Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1180 (10th Cir. 2020) ("As part of our review of a final decision under § 405(g), we may consider whether the ALJ complied with any legal requirements imposed by the Appeals Council upon remand."). However, the Court need not resolve this debate here because, in any event, the ALJ did comply with the Appeals Council's order.

The remand was necessitated by a miscommunication that occurred in connection with the first ALJ determination that Plaintiff was not disabled issued on October 3, 2018. Specifically, the ALJ was apparently unaware that Plaintiff had requested to keep the record open so as to allow her to meet with her dermatologist, Lorenzo Bucci, M.D., and obtain a medical source statement. Plaintiff did, in fact, obtain such a statement from Dr. Bucci prior to the ALJ's October 3 decision, and the Appeals Council found that "[c]onsideration of this medical source statement is needed." (R. 134). The order also instructed the ALJ to obtain additional evidence as needed and to reconsider Plaintiff's RFC. (R. 11, 135). Plaintiff's assertions notwithstanding, this is exactly what the ALJ did.

The ALJ discussed Dr. Bucci's statement at length and afforded it significant weight in regard to Plaintiff's skin condition. In so doing, she pointed out that Dr. Bucci had opined that Plaintiff's prognosis was good and that her condition was intermittent. However, she also noted that Dr. Bucci's statement provided no opinion as to Plaintiff's ability to sit, stand, walk, or engage in other physical activities and was therefore of limited probative value in other regards.

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 11) is DENIED and that Defendant's Motion for Summary Judgment (Doc. No. 13) is GRANTED as set forth herein.

s/Alan N. Bloch<br>
United States District Judge

ecf:	Counsel of record

---

(R. 26). She further obtained additional evidence, including a medical source statement from Mark Kielbiowski. M.D., which she also discussed extensively. She explained why she accorded the opinion no weight, citing the fact that it was clearly based on Plaintiff's subjective complaints and inconsistent with the objective medical evidence. (R. 26). While Plaintiff implies that the ALJ was expected by the Appeals Council to translate her consideration of this evidence into specific findings, there is no such mandate contained in the August 18, 2020 order.

Finally, Plaintiff contends that the ALJ did not include all of the limitations demonstrated in the record in her RFC findings. However, this – again – is a request for the Court to reweigh the evidence, which the Court cannot do. *See Hartranft*, 181 F.3d at 360; *Monsour Med. Ctr.*, 806 F.2d at 1190-91; *Berry*, 738 F. Supp. at 944 (*citing Cotter*, 642 F.2d at 705); *Malloy*, 306 Fed. Appx. at 764. Regardless, the ALJ provided detailed discussion as to how she formulated Plaintiff's RFC, citing objective medical evidence, including consistent findings of normal gait, strength, and range of motion, Plaintiff's activities of daily living, as well as her limited, routine, conservative (and largely effective) treatment. At various points in her decision, the ALJ expressly explained how the RFC accounted for Plaintiff's limitations. Further, her findings were supported by the opinions of the consultative examiner, the state reviewing agents, and an independent medical expert. In fact, the RFC, as crafted by the ALJ, included more restrictions than were generally contained in those opinions.

Accordingly, substantial evidence more than supports the ALJ's findings. The Court therefore affirms.